# Goddard's Estate.

*Trusts and trustees—Will—Power of appointment—Orphans' court sale.*

By deed real estate was given to a trustee to hold for the cestui que trust during her life, and after her death to convey the same as she might by her last will limit and appoint among her children. By will the cestui que trust devised the property in trust until the decease of the last survivor of her children, to pay the net income to her children, and after the death of the last survivor to divide the principal in a manner specified among the descendants of her children. By a codicil she excluded a son and his descendants from sharing in her estate, but directed that the son should be paid a specified annuity during his life, and also gave her husband an annuity. After the death of testatrix a petition was presented to the orphans' court for the sale of the real estate covered by the deed of trust. The son who had been excluded by the codicil resisted the petition. *Held,* that the orphans' court had jurisdiction to order the sale for the benefit of the estate, and as the proceeds of the sale would be held in trust in the exact place of the property sold, the question of the validity of the appointments by the will of the cestui que trust was premature.

Argued Jan. 21, 1900. Appeal, No. 327, Jan. T. 1900, by Walter H. Goddard, from decree of O. C. Phila. Co., April T., 1900, No. 496, ordering sale of real estate in the estate of Helen Goddard, deceased. Before McCollum, C. J., Mitchell, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Petition for an order to sell the premises 1002 Market street, in the city of Philadelphia.

From the record it appeared that on June 29, 1870, Sarah B. VanSyckel conveyed the premises in question to the Pennsylvania Company for Insurance on Lives and Granting Annuities:

" In trust for Helen Goddard during her life and from and after her death to hold or convey the same as the said Helen Goddard may by her last will or writing in the nature thereof

limit and appoint to and among her child or children or their issue in such share or shares and for such estate or estates as she may so limit and appoint. And in default of any such limitation or appointment then in trust for such child or children and the issue of any deceased child she may leave living at her decease, if one, solely, if more than one equally, such issue taking among them only the share or parts their parent would have taken if then living, to them their heirs and assigns forever to be conveyed to them only when the youngest living child of the said Helen Goddard shall arrive at lawful age. But with leave to the said Company to apply so much of the income of said estate as they may deem necessary towards the maintenance and education of the said children respectively during their minority."

Helen Goddard, after reciting the above power, and two others conferred upon her by Mrs. VanSyckel's will, by the fifth item of her will, dated July 5, 1879, devised and bequeathed all the rest, residue and remainder of her property, including this property and the other property over which she had a power of appointment, to the Pennsylvania Company for Insurance on Lives and Granting Annuities, "in trust until the decease of the last survivor of my children, to divide the net income quarterly into as many parts or shares as at each of said times of quarterly distribution there shall be children of mine then living and children of mine then dead represented by descendants then living plus, so long as my husband shall live, one additional share, and to subdivide the share which at each of said times of quarterly distribution shall fall to each set of descendants of a child of mine then dead amongst such descendants per stirpe, upon the principle of representation, and to pay over to my husband (so long as he continues to live) and to each child and descendant who at each of said times shall be found entitled his or her share, it being my will, however, that such income be paid to each beneficiary free and clear of its debts, contracts, engagements, alienations and anticipations and without liability to debts, levies, attachments or executions, in trust upon the decease of the last survivor of my children, subject to the temporary retention of a fractional part of the personalty whose denominator shall be the number of my children who shall then be represented by descendants then living plus one

share added of income, which temporary retained share shall be paid during his lifetime in the manner aforesaid to my husband, to divide the principal in trust into as many parts or shares as there shall be children of mine then dead represented by descendants then living and subdivide the share falling to each set of descendants of a then dead child among them per stirpe upon the principle of representation, and to pay over, assign and convey to each descendant who shall then be entitled its share.

" In trust upon the decease of the last survivor of my children in case there shall be no descendants of mine then living (subject to the temporary retention of one third of the principal, the interest of which, during his lifetime, shall be paid to my husband in manner aforesaid) to divide my residuary estate equally among the ' Home Missionary Society,' 533 Arch Street, ' Children's Home,' and ' Infants' Home.' "

By a codicil, dated January 26, 1885, Helen Goddard directed:

" Third. By the fifth clause of my will I have given my residuary estate to the Pennsylvania Company for Insurances on Lives and Granting Annuities in trust for certain purposes therein set forth.

" I now direct that in lieu of all income directed by said clause to be paid to my husband by said trustee there shall be paid to him during his lifetime in equal quarterly payments the sum of three thousand dollars ($3,000) per annum, free and clear of his debts, contracts, engagements, alienations, and anticipations, and of all liability therefor. All other directions in said clause of my will are subject to the payment of said annual sum to my husband during his life, and sufficient principal shall be retained after the death of all my children, if he shall then survive, to insure this payment to him."

By a codicil, dated December 13, 1889, Helen Goddard directed:

" For good reasons I have decided to deprive my son, Walter H. Goddard, and his descendants of all share in my estate, real and personal, and in all property over which I have any power of appointment. I, therefore, direct that no portion of such estate or property shall under any circumstances, pass to Wal-

ter or any of his descendants. I revoke all parts of my will and codicil by which they will be entitled to any share.

" I now will that in all directions to distribute principal or income or both amongst my children and descendants, the division and distribution shall be made as it would have been made had neither Walter or descendants of his have been born.

"I direct that so long as my son Walter lives there shall be paid to him the monthly sum of fifty dollars. This shall be paid to him only upon his own receipt for his sole and exclusive benefit. It shall not be alienated or anticipated, and shall not be liable for his debts, contracts, engagements, nor to sequestrations, levies and attachments."

Helen Goddard died February 19, 1891, and her will was duly probated in Delaware county on February 28, 1891. All of her children, six in number, were living at her death, and are still alive ; three of them were born after the execution of the aforesaid deed of trust and after the death of Sarah B. VanSyckel, and were minors at the death of Helen Goddard.

Walter H. Goddard resisted the petition for the sale of the real estate.

The matter was referred to J. Henry Williams, Esq., who reported in favor of the sale without, however, passing upon the question of the jurisdiction of the court. No exceptions were filed to the master's report, but counsel agreed to argue the question of jurisdiction upon the petition and answer.

After argument PENROSE, J., filed the following opinion :

It is unnecessary to decide whether the rights of the respondent, under the deed conferring the power of appointment upon the decedent, have been divested by a valid exercise of the power; the life estates which have been created certainly do not, while all of the donee's children are living, in any way infringe the rule against perpetuities, and during their continuance the estate remains in trust, as directed by the will.

That the price offered by the proposed purchaser is an extremely advantageous one, and that unless now accepted the opportunity may be lost altogether, is not questioned by the respondent, and all the other parties in interest concur in asking for a sale. The Act of April 27, 1855, P. L. 368, sec. 5, Purd. 1834, pl. 14, gives jurisdiction either to the orphans' court or

to the court of common pleas, where, as here, " the estate shall have been derived partly by deed and partly by descent or will ; " and as the rights of the respondent, if he has any, will not be prejudiced or affected by the sale, the fund produced being held, under section 6 of the act of 1853, Purd. 1833, pl. 6 for the same parties and the same uses as the land so sold, the withholding of his consent is " unreasonable " and this, in itself, is one of the grounds upon which, as the act provides, the sale may be decreed : Freeman's Estate, 181 Pa. 405.

The case is radically different from Johnston's Appeal, 185 Pa. 179, cited on behalf of the respondent, where the paramount object or " scheme " of the testator being the accomplishment of a purpose transgressive of the rule against perpetuities, subordinate interests, created in furtherance of such scheme, which, standing by themselves, might have been perfectly valid, were also held to be void, as mere incidents or agencies of a frustrated purpose. Here there was no such " scheme ; " the paramount purpose of the donee of the power was to make provisions for her children, in accordance with what she regarded as her right, and there was no deliberate or manifest intention to transgress the rule in the disposition directed when the estate so created shall respectively cease. See Van Syckel's Estate, 9 Pa. Dist. Rep. 367.

Exceptions dismissed and report of master confirmed absolutely.

On October 27, 1900, a form of decree recommended by the master and examiner was adopted by the orphans' court, and security fixed at $190,000.

*Error assigned* was the decree of the court.

*Daniel W. Simkins* and *Alfred M. Mohr*, for appellant.— Where the orphans' court is asked to order a sale on the ground that the estate is partly derived by will, which has been executed in pursuance of a power of appointment conferred in a deed of trust, it is the duty of said court to inquire into, and determine in favor of, the validity of appointment made by said will. . If the will be found invalid, and the deed contains a clause providing for a default of appointment, then the court cannot order a sale on account of lack of jurisdiction.

Testatrix was restricted in her appointment to children, and the issue of a deceased child, living at her decease: Wickersham v. Savage, 58 Pa. 365; Pepper's App., 120 Pa. 235; Van Syckel's Est., 9 Pa. Dist. Rep. 367.

Where the objects of the power and the persons entitled to take in default of appointment are identical, an appointment which includes nonobjects, will be declared void altogether: Horwitz v. Norris, 49 Pa. 213; Wickersham v. Savage, 58 Pa. 365; Fotterall's Estate, 12 Pa. C. C. R. 548; Little v. Bennett, 5 Jones' Eq. (N. C.) 156; Varrell v. Wendell, 20 N. H. 431; Pepper's Appeal, 120 Pa. 235; Fidelity Ins., Trust & Safe Deposit Company's Appeal, 4 W. N. C. 265; Stuyvesant v. Reed, 67 How. Prac. Rep. 16; Myers et al. v. Safe Deposit Trust Co., of Baltimore, 21 Atl. Repr. 58.

*John G. Johnson*, for appellee, was not heard.

PER CURIAM, February 25, 1901:

The report of the master and examiner approved and confirmed by the orphans' court, together with the decree of said court corresponding with and sustaining the same, constitutes a sufficient answer to the appellant's contention and renders extended discussion of the principal questions involved unnecessary. The argument of the appellant's counsel having been duly considered, and failed to convince us of error, it is our plain duty to affirm the decree.

Decree affirmed and appeal dismissed at the cost of the appellant.