# Feeney's Estate.

*Wills — Construction — Rule against perpetuities—Trusts and trustees — Vested and contingent remainders — Renunciation by cestui que trust for life—Spendthrift trust—Acceleration.*

1. All contingent estates fail, if they are not certain to vest within twenty-one years, and the fraction of a year for the period of gestation, after a life or lives in being at the date of the death of testator.

2. The remainders may be limited to as many persons successively as the devisor thinks proper, but they must all vest during the period fixed by the rule, and, if there is a possibility of the vesting taking place after that period, the rule is violated.

3. The validity of the provision is determined by circumstances existing at the death of the testator.

4. The life or lives in being mean those in being at the date of the death of the testator, and not those that commence to run at any time during the life of the first tenant.

5. The remainder cannot be limited to take effect upon a contingency, such as the death of a second life tenant more than twenty-one years after that of the first life tenant, if the second life tenant may be born subsequent to the death of the testator even though he would be in esse during the life of the first devisee; and this is the case in so far as the ultimate beneficiaries are concerned.

6. Where provisions creating particular estates in trust are inseparable and dependent parts of a testator's main scheme to tie up his estate in the ultimate gift, and thereby prevent the vesting until a date too remote, such provisions, including all the agencies or means designed to accomplish the desired and forbidden end, are void under the rule against perpetuities.

7. A testamentary scheme cannot be sustained where the dominant intent is not to create life estates particularly to benefit those who are to enjoy them, but to create such estates as are incidental to and for the purpose of supporting remainders which might not vest till a time beyond that allowed by law.

8. A testator violates the rule against perpetuities where he leaves one-seventh of his estate to trustees to pay the income therefrom to a son, one of seven children, for life, under a spendthrift trust, and at·his death to continue the trust during the lifetime of the children.of the son living at the time of the son's death, and upon the death of any of the said grandchildren to pay over the

said grandchild's "proportionate share of the corpus of the said fund" to testator's residuary legatees [who were his other six children] or their heirs.

9. Such fund, in the absence of other valid disposition of it, passes to the testator's heirs at law, and not to his residuary legatees.

10. The section of the Act of June 7, 1917, P. L. 403, 408, which provides that a void interest under a will shall be included in the residuary estate, has no application where the residuary clause itself is void as violating the rule against perpetuities.

11. Where a spendthrift trust created for a son for life, with remainder over to his children and grandchildren, violates the rule against perpetuities, a renunciation by the son of all interest in the estate, will not accelerate the subsequent life tenancies and ultimate remainders, so as to prevent the application of the rule against perpetuities; a void limitation is not capable of acceleration.

12. Such an acceleration is also contrary to the express intention of the testator, which was that the remainder should not take effect until the actual expiration of the life of the prior donee.

*Wills—Contingent remainders.*

13. Where persons who are to take under a will must be living at a certain future date and those who answer to the description cannot be determined until that time arrives, the gift is contingent.

14. Where a gift is only implied from a direction to pay, it is necessarily inseparable from the direction and must partake of its quality, insomuch that if the one is future and contingent, so must the other be.

*Wills — Construction — Gift to residuary legatees—Words "or" and "and."*

15. Where a testator directs that after the termination of successive life estates given by his will, the fund shall be paid to his "residuary legatees or their heirs," and it appears that the life tenants are a son and in succession children of the son, and the residuary legatees are six named children of testator, it will be assumed that the testator meant that heirs of such residuary legatees were to take as substitutionary legatees if the named legatees themselves should not be alive to take at the death of the children of the son respectively.

16. In such case the word "or" will not be construed to mean "and" so as to give the remaining heirs a fee simple, where other parts of the will show that testator knew how to create a fee simple estate when he so desired.

Argued March 14, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

Appeal, No. 29, March T., 1928, by Christopher Lyman Feeney, from decree of O. C. Allegheny Co., Nov. T., 1926, No. 202, sustaining exceptions to decree of distribution, in estate of Michael J. Feeney, deceased. Reversed.

Exceptions to adjudication of TRIMBLE, J.

The opinion of the Supreme Court states the facts.

Exceptions dismissed in opinion by MILLER, P. J., with dissenting opinion by TRIMBLE, J. Christopher Lyman Feeney, son and heir of testator, appealed.

*Error assigned,* inter alia, was decree, quoting record.

*John M. Ralston,* with him *Frank W. Stonecipher* and *W. I. King,* for appellant.—The rule in Pennsylvania is well established that where the persons who are to take, must be living at a certain time, the gift is contingent, because, until the time arrives, the persons who will answer to that description can not be ascertained: Rudy's Est., 185 Pa. 359, 360; Mulliken v. Earnshaw, 209 Pa. 226; Reiff's App., 124 Pa. 145; Frasier v. Gas & Water Co., 249 Pa. 570.

The limitation over is clearly not vested: Moore v. Smith, 9 Watts 403; Kountz's Est., 213 Pa. 390; Rosengarten v. Ashton, 228 Pa. 389; Patterson v. Hawthorne, 12 S. & R. 112.

The validity or invalidity of the limitation over under the rule is a question of law, and is as readily determinable now as later: Coggin's App., 124 Pa. 10; Heath's Est., 286 Pa. 335.

Testator's dominant intent being to control the corpus until a period unlawfully remote, the limitations are integral parts of the scheme and void: Johnston's Est., 185 Pa. 179; Geissler v. Trust Co., 257 Pa. 329; Lilley's Est., 272 Pa. 143; Crolius v. Kramer, 279 Pa. 275.

The spendthrift trust when renounced does not prevent complete operation of the rule: Gorgas's Est., 166 Pa. 269; Paul's Est., 1 Pa. D. & C. 231; Keys's Est., 16 Pa. C. C. R. 216; Disston's Est., 257 Pa. 537; Rosengarten v. Ashton, 228 Pa. 389; Bennett's Est., 270 Pa. 397.

*Thomas W. Neely, Sr.,* for appellee.—This case comes clearly within the line of cases in which the trust estate must take its course at least until the spendthrift trust estate is terminated by death of cestuis que trust: Morgan's Est., 223 Pa. 228; Biddle's App., 99 Pa. 525; Egbert v. DeSolms, 218 Pa. 207; Vance's Est., 141 Pa. 201; Ferguson's Est., 138 Pa. 208; Portuondo's Est., 185 Pa. 472; Gourley's Est., 238 Pa. 62; Reighard's Est., 253 Pa. 43.

Testator's dominant purpose is to vest the estate in the residuary legatees subject to the provision made for William Flinn Feeney and his children: Lockhart's Est., 267 Pa. 390; Whitman's Est., 248 Pa. 285; Fell's Est., 14 Pa. Dist. R. 327; Clapier's Est., 15 Pa. Dist. R. 540; Lakey's Est., 13 Pa. Dist. R. 533.

The second trust estate to the children of William Flinn Feeney for life, is valid and should be upheld: Rhodes's Est., 147 Pa. 227; Manderson v. Lukens, 23 Pa. 31; Lawrence's Est., 136 Pa. 354; Lilley's Est., 272 Pa. 143; Mull v. Mull, 81 Pa. 393; Muhlenberg's App., 103 Pa. 587; Packer's Est., 246 Pa. 116.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, May 14, 1928:

Michael J. Feeney, the testator, died November 6, 1925, his will being dated May 15, 1925; he left surviving him seven children, all of whom are provided for in the will.

Item 5 of the instrument, the portion particularly before us for construction, reads as follows: "I give,......to the Union Trust Co.......in trust, the remaining one-

seventh......for the following uses and purposes, and none other, to wit: to invest and reinvest the same...... and to pay the income therefrom to my son William Flinn Feeney [hereinafter called "son" or "first life tenant"] for and during the term of his natural life [subject to spendthrift provisions]. At the death of my said son......the fund shall continue in trust during the lifetime of the children of the said son......*living at the time of his death,* [italics ours] and the income from said fund shall be paid in equal shares to or for account of said children......Upon the death of any of the children of my son......his or her, the said child's proportionate share of the corpus of the said fund shall be paid to the residuary legatees or their heirs." The residuary legatees are named in a previous item of the will, being the six other children of testator, to each of whom he gave, free of trust, a one-seventh share of his residuary estate.

William, the above named equitable life tenant, filed, on February 23, 1927, a renunciation of all right to ask, demand or receive any interest, share or income under his father's will.

The auditing judge held that the testamentary provision with which we are dealing violated the rule against perpetuities, and distributed the one-seventh share therein provided for to the persons specifically named in the will as residuary legatees; he made this award in accordance with what he conceived to be the requirements of section 15 (c) of the Wills Act of 1917, P. L. 403, 408, which provides that an interest created by will, comprised in a devise or bequest which is void because contrary to law, "shall be included in the residuary devise if any be contained in the will."

On exceptions filed, the court below in banc disagreed with the conclusion of the auditing judge; it determined the trust was valid, and that, "accepting the son's declination as an entire elimination of him from the benefit of the trust, [it] still remains as to the children of Wil-

liam Flinn Feeney in accordance with the provision of the will." The final award was made accordingly.

The case is before us on the appeal of Christopher Lyman Feeney (a son and heir at law of testator and also one of the residuary legatees named in his will), who complains of the disposition made of the matter by the court below, contending (1) that the ultimate limitations over contained in the above testamentary provisions violate the rule against perpetuities; (2) that, under the general scheme of this item of testator's will, the particular estates created by him were intended as mere agencies to carry future limitations, and that such agencies are so inseparably intertwined with the ultimate limitations that they must fall as a whole; and (3) that, so far as the one-seventh share in question is concerned, this would bring about an intestacy.

Appellant's complaints are well founded: the provisions in question so violate the rule against perpetuities that, in our opinion, none of them can stand; therefore we cannot agree with the final award by the court in banc to "the Union Trust Company, trustee, for the purposes stated in the will," eliminating William's interest because of his renunciation; nor can we agree with the award which the auditing judge, following section 15 (c) of the Act of 1917, made to the six residuary legatees. As we view it, the statutory provision in question can have no application to a will the residuary clause of which in itself violates the rule against perpetuities; that this is true of the present instrument will be shown as we proceed.

In construing a will, we first find the intention of the testator, and then, if, as a result of that determination, the vesting of an estate is possibly postponed beyond the time allowed by the rule against perpetuities, the rule controls. Here testator put the legal estate in a trustee, for the duration of two successive life interests in the income, one for his son William and the other for the latter's children, the corpus not to be distributed till the

conclusion of the second of these interests, and then to be "paid" to persons, either named specifically or described generally, depending upon the fact of survivorship, who can be ascertained definitely only at the set time, which would be too late. We make the last two statements since it is apparent that a child might be born to the first life tenant after the latter comes into his estate at the death of the testator; that this child, if alive at the demise of its parent, would take an interest for life and might live more than twenty-one years; and that those entitled under the will to be paid the share of the principal on which such child had received income could not be ascertained, so that their interests would vest, till its death; finally, the person in question might be the only child of the first life tenant living at the time of the latter's death. Thus it may be seen that this will contains a scheme of distribution involving contingent remainders and the ultimate vesting of estates, which latter may not occur within a life or lives in being and twenty-one years and the period of gestation thereafter, the time fixed by the rule against perpetuities.

Various constructions suggest themselves to take the limitations under attack out of the rule, and some of these may be urged to sustain the position of the court below, supporting the intermediate life estates. For instance, it may be contended that, since two children of William were living when the will took effect, the second life tenancies then vested in them subject to be divested pro tanto by the birth of other children of William, and subject further to be divested by the death of either one or both of the present children before that of their father, the first life tenant (Wheaton Coal Co. v. Harris, 288 Pa. 294); that all the life estates being thus vested, the ultimate remainders also should be viewed as vested estates, whose enjoyment only has been postponed to let in the precedent life estates, which were testator's first care; and this position is taken by appellee. Here, however, neither the intermediate life es-

tates, nor the ultimate remainders are vested, and although the former will vest within the required period, the latter may not.ˑ Moreover, the will indicates, as we shall later show, that the life tenants were not testator's first care, and that all the limitations are so tied together as to form a scheme of distribution which must stand or fall as a whole. Besides, this controversy does not present a situation like that in Wheaton Coal Co. v. Harris, and other such cases, which hold that, where a legacy is made payable at a future time certain to come, and is not subject to a condition precedent, it is vested if there be an ascertained person in esse at testator's death, capable of taking when the time of enjoyment arrives, although his interest may be defeated altogether by his own death before that time. This principle does not apply where, as here, none of the remaindermen are ascertainable until the termination of the preceding particular estates. We have repeatedly held that where persons who are to take under a will must be living at a certain future day and those who answer to the description cannot be determined until that time arrives, the gift is contingent: Price's Est., 279 Pa. 511; Raleigh's Est., 206 Pa. 451; Coggin's App., 124 Pa. 10; and see Gray on Rule against Perpetuities (3d ed.), 86. Thus, under the terms of this will, the second life tenancies, or intermediate remainders, are contingent, for, until the death of the first life tenant, the identity of the members of that particular class of remaindermen, the son's children living at the son's death, cannot be ascertained; the two children now living may die before their father, and the latter may have other children born to him. Again, "where a gift is only implied from a direction to pay, it is necessarily inseparable from the direction, and must partake of its quality; insomuch that if the one is future and contingent, so must the other be": Moore v. Smith, 9 Watts 403, 407, and cases hereinafter cited. The wording of the present will is that "the income from said fund shall be paid in equal shares to......said chil-

dren" living at the death of the first life tenant; the provision as to time is annexed to the gift, not merely to the payment of it. Hence, for this reason also, the intermediate life estates are not vested but contingent: Kountz's Est. (No. 1), 213 Pa. 390, 395; Geissler v. Reading Trust Co., 257 Pa. 329, 334, 335, 337. For the same reasons, the ultimate remainders are equally contingent. Furthermore, on the facts in this case, William's renunciation of his life interest cannot have the effect of vesting any of these subsequent estates. All of which will be seen further on in this opinion.

There are several weaknesses in testator's scheme of distribution, so far as appellee's case is concerned: (1) the fact that the intermediate interests created by the will are contingent, with no possibility, after they vest, of continuing along the same line of lineal consanguinity represented by the life tenants, is some indication of a lack of dominant purpose to benefit those for whom they were created and suggests that they were employed by testator chiefly as a means of postponing the distribution of the corpus of his estate, with (2) other indications to the same effect, which are particularized in an excerpt from the opinion of the court below, as will later appear; (3) the fact that those who may prove to be the ultimate beneficiaries are not presently ascertainable; and (4) the fact of the possible remoteness of the time set for the vesting of such ultimate interests.

To take up the last two points before considering the others, the will before us provides that, upon the death of any of the children of William living at the latter's death, the child's proportionate share of the corpus of the fund (that is, the share from which he received income) "shall be paid to the residuary legatees or their heirs." Here again the provision as to time is annexed to the gift so as to make it contingent, for the designation of the ultimate remaindermen as "residuary legatees or their heirs" postpones the ascertaining of this group and makes the gifts in question contingent

until the conclusion of the immediately preceding particular estates, thereby delaying the final vesting possible for a prohibited period, as will be shown more fully later on.

It cannot be held that the word "or" as used above was intended by testator to mean "and." True, at times the word "or" and the word "and" are used interchangeably; and, were it evident that the testator intended merely to say that the interest in question was ultimately to go to his residuary legatees and their heirs, we should probably hold that this was only a technical way of stating that such residuary legatees (the other six children of the testator) were intended to have a fee simple. When the present will is examined, however, it shows that testator knew precisely how to create a fee simple estate when he so intended. In two other paragraphs of the will he states that the respective beneficiaries named by him are to take "absolutely in fee simple," and, in the very paragraph wherein he mentions his six residuary legatees by their respective names, he gives a one-seventh interest to each of them and to "their heirs and assigns forever." Therefore, when testator said, in the particular paragraph now before us for construction, that the estate was ultimately to be paid to his "residuary legatees or their heirs," it is evident he meant that the heirs of such residuary legatees were to take as substitutionary legatees if the named legatees themselves were not alive to take at the death of the children of the life tenant, respectively. The testator may well have anticipated that the six residuary legatees specifically named by him might not be alive at that time, since all of them were a generation older than those who must die, after the death of the first life tenant, before the interest of such legatees would accrue. It may readily be seen that the contingent ultimate remainders thus created possibly may not vest until the death of a child born to the first life tenant after the death of testator, who would survive its

parent more than twenty-one years,—a period longer than that allowed by the rule against perpetuities. "The validity of [a] limitation over after the death of [an] unborn tenant for life depends upon whether the remainder so limited is vested or contingent. If the remainder be vested in an ascertained person or in a person who must be ascertained, if at all, within twenty-one years after the death of the parent of the unborn tenant, it is valid; but if it may remain contingent until the death of the unborn life tenant it is too remote": 22 Am. & Eng. Enc. L., (2d ed.), 711.

We held in Gageby's Est., 293 Pa. 109, that all "future contingent estates fail, if they are not certain to vest within twenty-one years after a life or lives in being at the death of a testator." See also the definition given in Ledwith v. Hurst, 284 Pa. 94, 98. The remainders may be limited to as many persons successively as the devisor thinks proper, but they must all vest during the period fixed by the rule, and, if there is a possibility of the vesting taking place after that period, the rule is violated: Gageby's Est., supra. The period prescribed by law, as stated in Graham v. Whitridge, 99 Maryland 248, 274-275, 57 Atl. 609, 611, 66 L. R. A. 408, 413, for the future vesting of an estate in remainder, is during a life or lives in being at the time of its commencement (meaning at the time the estate was created by the taking effect of testator's will) and twenty-one years, with a fraction of a year beyond to cover the period of gestation, and where the vesting is deferred for a longer period the law denounces it as a perpetuity. In 22 Am. & Eng. Enc. L., 2d ed., 709, it is stated: "Where [a] limitation is created by will, its validity is determined by circumstances existing at the death of the testator"; see also 21 R. C. L. 291-292, section 14, and 294, section 17. The court below quotes from 2d Blackstone *174, section 3, that all future devisees must be "in esse during the life of the first devisee," and this apparently was inserted in its opinion for the purpose of show-

ing that "the life or lives in being" referred to in the rule can commence to run at any time during the life of the first life tenant; but, as we have seen above, such is not the rule; the reference to life or lives in being means those "in being at the death of the testator," as stated in Gageby's Est., supra, or in being at the time of the commencement of the first prior particular estate, according to the Maryland case above cited. In other words, a remainder cannot be limited to take effect upon a contingency, such as the death of a second life tenant more than twenty-one years after that of the first life tenant, if the second life tenant may be born subsequent to the death of the testator, even though he would be in esse during the life of the first devisee; and that is this case, in so far as the ultimate beneficiaries are concerned. The trust is not, as stated in the opinion of the court below, first for the life of testator's son, "second for the life of the son's children in being at the time the testator died," and then over to the ultimate beneficiaries; on the contrary, the second limitation is for the life of the son's children "living at the time of his [the son's] death," no matter whether such children happen to be born before or after the death of testator. Hence, as we have said, it is possible that the ultimate beneficiaries can. not be ascertained, so that their remainders will vest, till the death of a child of the first life tenant, born after the death of the testator, and who outlived its parent more than twenty-one years, and that is too late.

It is claimed, nevertheless, that the renunciation by William (the first life tenant) of his interest has the effect of accelerating the second life tenancies and ultimate remainders, on the theory that the two grandchildren now living take vested interests, and therefore the limitation to the named residuary legatees or their heirs will vest within the time required by the rule. This contention cannot be sustained. As previously explained at some length, both the intermediate and the ultimate remainders are contingent. Moreover, a void limitation

is not capable of acceleration, and the ultimate remainders in this case are undoubtedly void under the rule against perpetuities (even without regard to other considerations, which we shall presently discuss, that bring all of the limitations here involved within that rule), for, as noted at the end of the last paragraph, it may be that those entitled to the corpus of the estate would not come into their shares until the death of a child of the first life tenant, born after the death of the testator, who would survive its parent more than twenty-one years. Finally, the renunciation by William of his life estate cannot in this case accelerate the subsequent estates contrary to the express intention of the testator. The rule which governs the acceleration of remainders is stated in 24 Am. & Eng. Enc. L., (2d ed.). 418, thus: "A gift ......to one for life, and from and after his decease to another, means from and after the determination of the preceding estate, and therefore, where the preceding estate is determined otherwise than by its regular expiration, the gift over, if vested at the time of such determination of the preceding estate, is accelerated and takes effect in possession immediately, having been postponed only for the benefit of the life tenant. [A] common instance in which the remainder is thus accelerated is where the devisee of the life estate refuses to accept it ......This doctrine of acceleration, however, is not an arbitrary one, but it is founded, in the case of a will, on the presumed intention of the testator that the remainderman should take on the termination of the previous estate notwithstanding the prior donee may be still alive, and is applied in promotion of the presumed intention of the testator and not in defeat of his intention;......and when it is the evident intention of the testator that the remainder should not take effect until the [actual] expiration of the life of the prior donee, the remainder will not be accelerated." This rule, as it is stated, has been recognized in our cases: See Fletcher v. Hoblitzell, 209 Pa. 337, 344. In the present instance, the writer of the

will shows, by the whole structure of the testamentary
item we are considering, that he intended to postpone
the vesting of the second or intermediate life tenancies
created therein until the death of his son, and to tie up
the final division of the part of his estate which this
item covers until the death of his son's children, respec-
tively; in neither instance were the remaindermen in-
tended to be ascertained before the times specified by
testator.   Under such circumstances the court will not
decree an acceleration, though there be no question of
the validity of the ultimate limitations, and certainly
not where, as here, the ultimate limitations are not only
contingent but invalid.   Even in the case of a widow who
takes against the will of her husband, acceleration will
not always be decreed.   In Reighard's Est., 283 Pa. 140,
145, we said that, where the will "shows a purpose that
those [who are] to take the principal shall be ascer-
tained at [a certain time], not before......, and there
is no way of telling who those persons ultimately en-
titled to the estate [at the time fixed for distribution]
will be," no immediate distribution will be ordered on
the theory of acceleration of remainders.   Reighard's
Estate is cited in Loew's Est., 291 Pa. 22, 28, and we
there say that, where the "span of a life" is used by the
testator as a definite "yardstick" to measure the dura-
tion of a period which must expire between the death of
a testator and the distribution of the corpus of his es-
tate, acceleration will not be decreed; and that is this
case.   The will before us shows an intention that those
who are to take the principal shall be ascertained at the
death of the grandchildren respectively, and not before.
Then, as we have already said, there is the further fact
that the ultimate estates sought to be accelerated trans-
gress the rule against perpetuities; which makes them
incapable of acceleration by anything occurring after
the death of the testator.

The several life estates, used as they are in the present
will to fill in the gap between the death of testator and

the time when his ultimate beneficiaries are to be ascertained and take their estates, were plainly intended as essential parts of what the law condemns as an illegal scheme of distribution, and under such circumstances they and all subsequent limitations dependent on them are defeated; for this will does not fall within the doctrine of Whitman's Est., 248 Pa. 285, 288, where life interests, prior to the distribution of the corpus of the estate, were held not to be affected by reason of subsequent limitations transgressing the rule against perpetuities. In that case the life interests in question were allowed to stand despite the illegality of the ultimate remainders because the will evidenced a dominant purpose to care for those for whom the testator had created the particular estates, and the ultimate limitations, which transgressed the rule against perpetuities, represented a mere secondary intent not inseparably connected with the precedent estates: See also Ewalt v. Davenhill, 257 Pa. 385; Ledwith v. Hurst, 284 Pa. 94; annotation in 28 A. L. R. 375. The will we are considering falls into the class of cases represented by Lilley's Est., 272 Pa. 143, 153, which holds that where provisions creating particular estates in trust "are inseparable and dependent parts of the testator's main scheme to tie up his......estate in the ultimate gift, and thereby prevent the vesting until a date too remote, such provisions, including all the agencies or means designed to accomplish the desired and forbidden end, are void under the rule": Johnston's Est., 185 Pa. 179; Gerber's Est., 196 Pa. 366; Kountz's Est. (No. 1), 213 Pa. 390; see also annotation in 28 A. L. R. 375. Here the will shows a paramount purpose to keep the part of the estate with which we are dealing entire beyond the period allowed by law, and not to give William or his line any of the corpus. The auditing judge, in a dissenting opinion, correctly states: "At first glance it may appear that the prime consideration of Michael J. Feeney [the testator] was to protect an improvident son through a

spendthrift trust, and next [to protect the latter's] children, living at [the son's] death, for their lives, without [giving them the corpus of the fund] ; but a study of the will induces the conclusion that his dominant intent was [so to write his will] that the corpus was to be carried over if necessary to heirs of his residuary legatees, however remote. He was not so much concerned that his son and [the latter's] children should have a beneficial interest in [this one-seventh] share of his estate, as he was that they should never be able to use or transmit any of the principal. He was charmed with the idea of keeping a spendthrift trust hanging over his son's head during his lifetime and an active trust during the lives of his [the son's] children living at his son's death. He had no thought or care about the future of any grandchildren he might have in this line of his family beyond giving them the income [a posthumous child of his son, for instance, would get nothing]. The son and his wife and their children must have knowledge throughout their lives that the principal of this share will pass to the heirs of the residuary legatees, no matter how remote......from [testator]. He would not allow [the son] nor his children to transmit it along his own line by appointment or otherwise. By contingent estates the children of William......could begin the enjoyment of life [interests] and by living to old age postpone the [ultimate] vesting [of the principal] until far into the next century, when, perhaps, persons unknown would become seized of this estate. This was [testator's] dominant intention," and it clearly transgresses the rule against perpetuities. When a will shows such a condition of affairs, the life interests which support the illegal ultimate limitations fall with the latter, because they are all part of a common testamentary scheme violative of the rule against perpetuities. This result follows without regard to whether the testator, with actual knowledge of the rule, deliberately planned to defeat it; in such cases, the point is, does the general

testamentary scheme under attack indicate a plan in which the dominant intent was not to create life estates particularly to benefit those who were to enjoy them, but to create such estates as incidental to and for the principal purpose of supporting remainders which might not vest till a time beyond that allowed by law? If so, the whole scheme fails.

We conclude from a close study of the will that all of the testamentary provisions in item 5, including the creation of the life interest given to the son and the like interests for his children, were intended by testator as essential parts of a general scheme which ties up the vesting of the principal of the estate until a time forbidden by the rule against perpetuities; therefore, even had William not renounced his life interest, all such provisions must have fallen as one, and his renunciation cannot alter that result. This conclusion brings about an intestacy, for the provisions in section 15 (c) of the Wills Act of 1917, P. L. 403, 408, that testamentary bounties which fail because contrary to law "shall be included in the residuary devise or bequest, if any," must be construed to mean when such residuary devise or bequest is not, as here, unlawful in itself.

The decree appealed from is reversed and the record ordered returned to the court below for disposal of the case in accordance with the views expressed in this opinion; costs to be paid out of the fund.