## Bilyeu's Estate

*Robert J. Sterrett*, for estate of Marion B. McCarty, exceptant.

*Isaac A. Pennypacker*, guardian ad litem for Harold D. Bilyeu, Jr., and Frazier V. Bilyeu, minors, exceptants.

*Joseph H. Grubb, Jr.*, for trustee for Helen V. Bilyeu, exceptant.

*Joseph C. Henry*, contra.

STEARNE, J., February 14, 1941. — Exceptions are taken to an adjudication of an account of a testamentary trustee, concerning the distribution ordered by the auditing judge. The trust is terminated because of the death of the life tenant.

In order to encompass the questions in controversy, it is necessary to recite certain of the facts, even though they are accurately and meticulously recited in the well-considered adjudication.

Testator died in 1897. The will first erects a trust of the residuary estate for the life of the widow. Upon the audit of the executor's account it was so awarded. The life tenant died in 1935. Upon the widow's death the will directed that the *principal* of the trust be divided into as many parts as there were *then surviving* children and grandchildren, children of deceased children. The will further provided that, where such distributee was a son or grandson, such remainder passed to him at the age

of 25, absolutely. Should, however, a distributee be a daughter or granddaughter, then such share was directed to be continued in trust to pay such daughter or granddaughter the income thereon for life with remainder to the children of such daughter or granddaughter. Provision was also made concerning default of children of deceased children.

When the widow died there were then surviving two children and one grandchild (child of a son who survived testator but died before his mother). One was a son, *Harold;* another was a daughter, *Marion;* and the third was a granddaughter, *Helen.*

Accordingly, at the audit of the trustee's account (so occasioned by the death of the life tenant), Judge Sinkler, the auditing judge, in accordance with the terms of the will, awarded to the son *Harold* one third absolutely; one third to the trustee for the benefit of the daughter *Marion* for life, and the remaining one third to the trustee for the benefit of the granddaughter *Helen* for life.

One of the two trusts has now terminated because of the death of Marion (Marion B. McCarty), who died, without surviving children, on December 7, 1939. The account of the trustee as to this share is now before the court for adjudication, and concerning the awards in which exceptions have been filed.

Item 5, sec. 2, of the will deals with the situation when a daughter or granddaughter dies without leaving children. It provides: ". . . to distribute . . . in default of such children among my surviving children or grandchildren as though it had formed part of the original estate apportioned among such survivors."

The auditing judge awarded one half of the fund *absolutely* to the estate of the deceased son Harold, and the other half *absolutely* to the granddaughter Helen.

The trustee of the estate of Marion B. McCarty, deceased (the deceased life tenant of the present trust), excepts to the ruling of the auditing judge. It is vigorously argued that testator's whole testamentary scheme, after

the death of the widow, is invalid because it is in violation of the rule against perpetuities. It is maintained an intestacy resulted.

Such contention appears to be without merit. Testator was providing for his widow and their children. He contemplated the death of a child during his lifetime or that of his widow. In such event, children of deceased children took by representation. Furthermore, such children or grandchildren were to be ascertained at the death of the widow. Up to this point there is not the slightest question of validity of the bequests. But testator did not wish a *daughter* or *granddaughter* to take her share absolutely. Such shares were to be retained by the trustee in trust for a daughter or granddaughter *for life* with remainder to their children.

The bequest to a daughter for life with remainder to the daughter's children is clearly a valid gift. The remainder is not too remote because it vests upon the death of the daughter, who necessarily must be living at the time of the death of testator: Hunter's Orphans' Court Commonplace Book, vol. 2, sec. 1, p. 1020; Warren's Estate, 320 Pa. 112.

It may well be that, so far as remainders to great-grandchildren are concerned—children of a granddaughter life tenant—they may be adjudged void for remoteness. See Hunter's Orphans' Court Commonplace Book, vol. 2, sec. 8, p. 1024. But this question is not now before us, and any such consideration is premature: Hecht's Estate, 316 Pa. 12; Quigley's Estate, 329 Pa. 281; Wanamaker's Estate, 335 Pa. 241.

We do not agree, however, in the facts of this case, that if any remainders are held to be void for remoteness the striking down of such remainders would so emasculate testator's entire testamentary plan as to render it inoperative. As pointed out by Mr. Justice Stern in Quigley's Estate, supra, p. 290, valid life estates are only stricken down and invalidated where they are "inextricable parts of a frustrated testamentary purpose".

See Feeney's Estate, 293 Pa. 273. There appears nothing in the present facts which even remotely suggests the employment of a valid life estate as a scheme or design to circumvent the rule: Warren's Estate, supra, p. 121.

The guardian ad litem for the two minor sons of testator's deceased son, Harold, filed exceptions. Harold survived his mother, the life tenant, and received his original one-third distributive share absolutely. He subsequently died, testate. As recited above, an absolute award was made to the estate of Harold.

As we understand the guardian's contention, it is that survivorship should be determined as of the date of death of the present life tenant, Marion, and not, as ruled by the auditing judge, the date of the death of the widow life tenant.

We agree with the auditing judge that it is the date of the death of the widow which governs. The present trust res is to be distributed, using the words of the will, "as though it had formed part of the original estate apportioned among such survivors". When we examine who were the "survivors", we find them to be fixed by testator as of the death of the widow life tenant. As Harold was a child, who so survived, and was in fact awarded his share absolutely, the present share must likewise be awarded to his estate. We cannot profitably add to what the auditing judge has so clearly written.

The trustee for Helen (granddaughter) for life, excepts to the award to Helen *absolutely.* It contends that this share should have been awarded to the trustee in the same manner as the original share was awarded.

We have examined the reasons which are assigned by the auditing judge for his award. He concluded that the direction to *distribute* among the survivors "as though it had formed a part of the original estate apportioned among such survivors" is ambiguous. He ruled that such provision may refer to the *method* of a stirpital distribution and not necessarily to the trusts and limitations of the will.

It is quite true that, as in Goodin's Estate, 328 Pa. 548, and other cases cited in the adjudication, as well as in many other authorities, which could be quoted, restrictions on original shares do not apply to what may thereafter accrue, *unless the intent that they do so is clearly expressed.*

Despite the learning and effort expended by the learned auditing judge, we disagree with his conclusion. As we view it, testator *has* expressed with sufficient clearness an intent to place the same restrictions and trusts upon the accrued shares as are placed upon the original uses.

The intent of testator is the polar star in the construction of wills: Sarver's Estate, 324 Pa. 349. If the language is plain and clear the will interprets itself, and no rules of construction are necessary to aid in its interpretation: Boyer et al. v. Campbell et al., 312 Pa. 460.

Of one thing there is not the slightest doubt: as respects an original share, where a distributee was a son or grandson, such share was to pass absolutely. But where the distributee was a daughter or granddaughter, such share was to be held for life, with remainder to her children.

To us it is inescapable that testator intended the same restrictions and trusts to apply to the accruing shares as he fixed for the original shares. The two clauses read as follows:

". . . to apportion my estate into as many parts as there are then surviving children . . . (or grandchildren) . . . and to hold the share of each daughter and granddaughter for her life. . . ."

The will then provides for the disposition of a remainder where a daughter or granddaughter dies without leaving children. (This *has* occurred in this trust.) The words are:

". . . in default of such children [to distribute] among my surviving children or grandchildren, as though it had formed part of the original estate apportioned among such survivors".

Had Marion not survived her mother her share would have enhanced the estate then distributed, and would have formed a part of Helen's trust. To us, testator's language seems plain that he intended, in case of the death of a daughter without children, to pass such share to the other children and grandchildren *as though it had formed part of the original estate.*

Reading the will from its four corners, we gather a clearly-expressed testamentary intent that one half of the fund now accounted for must be added to the original share held by the trustee for Helen Van B. Bilyeu, from which she is only entitled to the income for life.

The exceptions of the trustee for Helen Van B. Bilyeu under the will of Frazier P. Bilyeu are sustained; all other exceptions are dismissed; the adjudication in all other respects is confirmed absolutely.

Van Dusen, P. J., dissents.