## Yewdall's Estate.

Argued November 26, 1941. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Raymond M. Remick,* of *Saul, Ewing, Remick & Harrison,* with him *Frederick B. Smillie,* for appellants.

*Rodney T. Bonsall,* with him *W. LeRoy McKinley, Carlyle H. Ross* and *Evans, Bayard & Frick,* for appellees.

OPINION BY MR. JUSTICE STERN, January 5, 1942:

John Yewdall willed his residuary estate to a trustee, in trust to pay one-half of the income to his daughter for life and the remaining half to his grandchildren for their respective lives from the time they each attained the age of twenty-one years; after the death of the daughter the grandchildren were to receive the entire income; all these life estates were subject to spendthrift provisions. As each of the grandchildren attained majority he or she was to be paid the sum of $10,000 out of the principal. Upon the death of each grandchild the part of the principal representing his or her share was to go to his or her children and the issue of deceased children, and the share of a grandchild dying without issue to his or her testamentary appointees, or, in default of appointment, to the other grandchildren and issue of deceased grandchildren; in case of the death of all the grandchildren without leaving lineal descendants and without having exercised their powers of appointment, the residuary estate was to be divided among the nephews

and nieces of testator and the then living descendants of deceased nephews and nieces.

Yewdall died in 1901. His daughter, who died in 1925, had three children, all of whom were born prior to the date of the will and survived the decedent; one of them died in 1911, intestate, unmarried, and without issue; the other two are the appellants. The present proceeding arises from an accounting by the executor (identical with the trustee) of the proceeds of the sale of some real estate. At the audit of the account it was apparently conceded that the life estates of testator's daughter and grandchildren were legal,* but the limitations in remainder after these life estates violated the rule against perpetuities and were therefore void. The controverted question is whether the valid life estates fall with the invalid remainders. The court below held that they did, decreed that the residuary trust was "wholly bad," and awarded the entire residue of the estate to testator's next of kin, namely, his daughter, or, to avoid circuity of proceedings, she being deceased, to those entitled under her will.

In *Quigley's Estate,* 329 Pa. 281, 289 et seq., 198 A. 85, 88, the two types of cases in Pennsylvania were collated—those in which the validity of prior limitations was held not to be affected by reason of ultimate ones which transgressed the rule against perpetuities, and those in which the prior limitations, although valid in themselves, were held to fall because they formed part of such an integrated testamentary scheme that they could not be separated from it without defeating the organic plan of the testator. It was pointed out (p. 290,

---

* The court below was apparently of the opinion that even the life estates of the grandchildren violated the rule against perpetuities. This was obviously an inadvertence. Since the grandchildren, although referred to in the will only as a class, would all have to be born prior to the death of their mother, decedent's daughter, whose life was in being at his death, the interests of all of them would necessarily vest within the time limit of the rule.

A. 89) that the inquiry in each case should be, as phrased in *McCaskey's Estate,* 293 Pa. 497, 508, 143 A. 209, 213, whether "the striking down of the void gifts would, in vital matters, so emasculate his [the testator's] plan of distribution, as to render it reasonably certain he would not have made the will in the way he did had he known it could not be sustained in the respects in which it must be set aside," or, as a suggested alternative test, "Would the testator have intended that all the limitations of the trust should stand or fall together?" An examination of the decisions there cited which struck down the prior limitations where the later ones involved violations of the rule discloses that in all of them, with the exception of *Feeney's Estate,* 293 Pa. 273, 142 A. 284, the testator prescribed a specific time, too remote, when a division of his entire estate was to be effected, thus justifying the assumption that the distribution at the time indicated was the dominant feature of the testamentary scheme and that the precedent limitations were but legalistic props to support the continuance of the estate until the designated period should arrive. As for *Feeney's Estate,* upon which appellees principally rely, the testator there gave the income from one-seventh of a trust estate to a son, William, for life, then to the children of William for their respective lives, and upon the death of any of such children his or her share of the corpus was to be paid to the six other children of the testator or their heirs. Whether rightly or wrongly, the court was of opinion, from a reading of the will as a whole, that the testator was not particularly concerned that William and the latter's children should have a beneficial interest in this one-seventh share of his estate, his object in creating their life estates being not so much to benefit them as to support the remainders.

In the will now under consideration no fixed time, independent of contingencies, for a distribution of the estate is prescribed. Testator's daughter and his three granddaughters, the youngest of whom was nine years

old at the time of his death, were evidently the chief, probably the sole, objects of his concern. His solicitude for their welfare is shown by the spendthrift provisions which he utilized to protect them—a means not uncommonly employed by parents to assure their children, especially daughters, the enjoyment of income during the whole of their lives, and to prevent an improvident expenditure by them of the principal. The life estates of the daughter and grandchildren were clearly created for a purpose of their own and not as incidental to a general testamentary scheme; indeed the limitations over were apparently made by testator only because, as was said in *McCaskey's Estate* (p. 508, A. 213), "there had to be remainders, and he preferred to dispose of them by his will rather than have them pass under the intestate laws." There can be no doubt that if he had known that the ultimate limitations which he provided in his will could not be sustained he would have intended that the life estates should remain intact rather than that the entire residuary trust should be invalidated, the safeguarding provisions which he had thrown around the bequest to his daughter destroyed, and the provision he had made for his granddaughters nullified.

The decisions in the cases following *Quigley's Estate* have all adhered to the general doctrine that prior limitations are not to be considered as disturbed by reason of the invalidity of ultimate ones in the absence of clear evidence in the will that the testator would have intended otherwise: *Wanamaker's Estate,* 335 Pa. 241, 6 A. 2d 852; *Uch's Estate,* 338 Pa. 396, 12 A. 2d 905; *Reed's Estate,* 342 Pa. 54, 19 A. 2d 365.

We hold that the life estates here created for testator's daughter and her children are not impaired by the subsequent limitations even though it be judicially determined hereafter that the latter transgress the rule against perpetuities.

Decree reversed; costs to be paid out of decedent's estate.