## Edwards Estate.

Argued March 13, 1962.   Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*John S. Simpson,* with him *Fisher, Ruddock & Simpson,* for appellants

*Alan Holsinger,* for appellees.

OPINION BY MR. CHIEF JUSTICE BELL, May 4, 1962:
These are appeals by named legatees from the final decree of the Orphans' Court of Indiana County affirming the auditor's report which held that the will violated the rule against perpetuities and directed the testamentary trustee to distribute the entire corpus of the estate to the testator's heirs at law.

Testator, a bachelor without issue, died on January 29, 1938, leaving, under Paragraph Third of his will, a life estate in Mrs. Mary E. Edwards, who died on September 25, 1957. The trustee filed a first and partial account. Paragraph Fourth creates the controversy now in issue. It provides: "At the death of the said Mrs. Mary E. Edwards, the *income** of the said trust fund shall be paid to the following *named* persons in equal shares and in semi-annual payments [naming 13 individuals, three of whom were his heirs at law. This was prima facie a valid provision].

---

* Italics throughout, ours.

"In the event of the death of any of the above named legatees, their interest [in income] shall go in equal shares to their children. If any of the said legatees should die without children, their respective interest shall revert to the trust fund, and the interest thereof shall be divided equally among the remaining legatees. It is my will and I therefore direct that the income from the trust fund shall be paid in the same manner to the *grandchildren* of the above named legatees *during their lifetime,* and at their death, their respective shares of the *corpus* of the trust fund be paid to their children, each child to receive the proportionate share of his or her parent in the said fund. [This gift violated the Rule against Perpetuities.] In the event any of the said grandchildren should die without leaving issue, then the interest of such person shall revert to the trust fund and be divided equally among the remaining legatees." This gift likewise violated the Rule against Perpetuities. In other words, not only was the testator's gift of principal invalid, but his aforesaid class gift of income violated the Rule.*

The sole issue in this case is the correctness of the determination of the Court below that the invalid limitations were so much a part of testator's testamentary scheme of distribution that the intermediate life estates became infected and must fall.

The applicable rules in such situations have been definitely established, their application is sometimes difficult. In *Quigley's Estate,* 329 Pa. 281, 198 A. 85, Mr. Justice (later Chief Justice) STERN said (pages 289-290) : ". . . Ordinarily the validity of prior limitations is not affected or disturbed by reason of ultimate

---

\* Because testator died in 1938, the Act of April 24, 1947, P. L. 100, §4, 20 PS §301.4, which changed the Rule and makes actualities at the end of the period rather than possibilities at the creation of the interest govern, is inapplicable. See *Newlin Estate,* 367 Pa. 527, 80 A. 2d 819.

ones which transgress the rule against perpetuities. There is a well nigh continuous current of authorities in Pennsylvania establishing this principle: Lawrence's Estate, 136 Pa. 354, 365, 366; Goddard's Estate, 198 Pa. 454, 457, 458; Whitman's Estate, 248 Pa. 285; Ewalt v. Davenhill, 257 Pa. 385, 390, 391; Jones's Trust Estate, 284 Pa. 90, 93, 94; Hays's Estate, 288 Pa. 348, 353, 354; McCaskey's Estate, 293 Pa. 497, 508; Kern's Estate, 296 Pa. 348, 356-358; Lockhart's Estate, 306 Pa. 394, 405; Hecht's Estate, 316 Pa. 12; Warren's Estate, 320 Pa. 112, 121; McCreary's Trust Estate, 328 Pa. 513.

"It is true there are cases in which prior bequests, entirely valid in themselves, fall by reason of being but incidental factors in a general plan of distribution the vital portion of which is invalidated because of remoteness, or, in other words, where a series of limitations form such an integrated testamentary scheme that they cannot be separated from one another without defeating the organic plan of the testator. It was said in Lilley's Estate, 272 Pa. 143, 153: 'Where the limitations of the prior and ulterior estates are so intimately and inseparably intertwined that the failure of the limitation of the latter disturbs the main and dominant purpose of the testator, of which the prior limitations are a part, such prior and ulterior estates are void; so, too, where the prior estate is but a mere agency to accomplish a transgression of the rule.' Perhaps, instead of making the criterion the 'dominant intention' of the testator, it might be better, adopting phraseology from the opinion in McCaskey's Estate, 293 Pa. 497, 508, to inquire whether 'the striking down of the void gifts would, in vital matters, so emasculate his (the testator's) plan of distribution, as to render it reasonably certain he would not have made the will in the way he did had he known it could not be sustained in the respects in which it must be set aside.'

Such a test makes the question analogous to the familiar subject of inquiry whether the remaining portions of a statute should be held valid and in effect after part of the act has been declared to be unconstitutional. Would the testator have intended that all the limitations of the trust should stand or fall together?"

And in *Laucks Estate*, 358 Pa. 369, 57 A. 855, the Court said (pages 375-376) : "It is undoubtedly the *general* doctrine that the validity of prior limitations is not affected by reason of ultimate ones which transgress the rule, the truth of this statement being strikingly demonstrated by the fact that in all the cases above cited it was held that the life estates there involved were valid irrespective of the validity or invalidity of the subsequent limitations, while the same conclusion has been reached in other cases in which the problem has been presented to this court; for example: Lawrence's Estate, 136 Pa. 354, 20 A. 521; Ewalt v. Davenhill, 257 Pa. 385, 101 A. 756; Hays's Estate, 288 Pa. 348, 135 A. 626; Kern's Estate, 296 Pa. 348, 145 A. 824; Betts v. Snyder, 341 Pa. 465, 19 A. 2d 82; Yewdall's Estate, 343 Pa. 478, 23 A. 2d 460; Yeager Estate, 354 Pa. 463, 47 A. 2d 813. Prior bequests, if entirely valid in themselves, fall only where they are such closely integrated factors in a general scheme of distribution, the vital portion of which is invalidated because of remoteness, that they cannot be detached without defeating the organic plan of the testator: Feeney's Estate, 293 Pa. 273, 286-289, 142 A. 284, 289, 290; Quigley's Estate, 329 Pa. 281, 289, 198 A. 85, 88. The test to apply in order to determine whether such inseparability exists has been variously stated,—sometimes that the criterion is the 'main and dominant purpose of the testator' (Johnston's Estate, 185 Pa. 179, 192, 39 A. 879, 883), other times that the inquiry should be directed to ascertaining whether 'the striking down of the void gifts would, in vital matters, so

emasculate his [the testator's] plan of distribution, as to render it reasonably certain he would not have made the will in the way he did had he known it could not be sustained in the respects in which it must be set aside.' (McCaskey's Estate, 293 Pa. 497, 508, 143 A. 209, 213). In other words, would the testator probably have desired that all the limitations of the trust should stand or fall together? Is the ultimate limitation apparently so essential to his dispositive scheme that it can be inferred that, if it were to be declared invalid, he would not have wanted the prior limitations to continue in existence?"

It is apparent that the aforesaid life estate as well as the ultimate gifts of corpus are so essential to his scheme, that, being invalid, he would not want the prior valid gifts of income to continue. The Court below agreed with the auditor that the testator's primary consideration was of Mary E. Edwards, and that his plan in the Fourth Paragraph was to delay vesting of his estate until vesting in the great-grandchildren of the named beneficiaries or grandchildren who might be born after lives in being and 21 years thereafter.

A similar plan to postpone vesting in *Feeney's Estate*, 293 Pa. 273, 142 A. 284, was held to fall. The Court, speaking through Mr. Chief Justice VON MOSCHZISKER said (pages 288-289) : ". . . When a will shows such a condition of affairs, the life interests which support the illegal ultimate limitations fall with the latter, because they are all part of a common testamentary scheme violative of the rule against perpetuities. This result follows without regard to whether the testator, with actual knowledge of the rule, deliberately planned to defeat it; in such cases, the point is, does the general testamentary scheme under attack indicate a plan in which the dominant intent was not to create life estates particularly to benefit those who were to enjoy them, but to create such estates as in-

cidental to and for the principal purpose of supporting remainders which might not vest till a time beyond that allowed by law? If so, the whole scheme fails."

We believe the testamentary scheme, the general plan of distribution and dominant intent of this testator was to tie up his trust estate for a period far beyond that permitted by the Rule.

Decree affirmed; each party to pay own costs.