## Yewdall Estate

*Davis, Cirillo and Cahall,* and *Saul, Ewing, Remick and Saul,* for accountants.

*Waters, Fleer, Cooper & Gallager; Pepper, Hamilton & Scheetz; Desmond T. McTighe;* and *Albert C. Weymann, Jr.,* for claimants.

*Sidney Salkin,* Assistant United States Attorney, and *Drew J. T. O'Keefe,* United States Attorney.

TAXIS, P. J., September 29, 1965.——. . . The reason or purpose for the filing of this account is the death of Alice K. Leinau on August 15, 1964. She was a life tenant, and the granddaughter of testator. This event now requires distribution of one half of the principal of the trust, and a problem has arisen concerning the determination of the proper recipients.

Testator died in 1901, and by paragraph 10 of his will gave one half of the income of this trust to his daughter and only child. The other half of the income, after provision for accumulation during minority, was bequeathed to his grandchildren for his daughter's lifetime. At her death, the entire income was given to his grandchildren for their lives, and then, upon each grandchild's death, trustee was directed ". . . to assign and pay over the share in my residuary estate, theretofore producing the income received by such grandchildren so dying unto the children of such grand-child and the lawful issue of such of them as may be deceased in equal shares . . ."

Testator had three grandchildren: Jeannette K. Trumper, Alice K. Leinau and Mildred Keim, all born in his lifetime. Mrs. Leinau, who has just died, had seven children, five of whom are still alive. The sixth has died leaving two children, and the seventh has died leaving four children. Jeannette K. Trumper survives, and her one-half share of the estate continues in trust. Mildred Keim died in 1911, during minority, and without issue.

The present problem concerns the effect of the rule against perpetuities on testator's scheme of distribution. Fidelity-Philadelphia Trust Company, appearing as administrator d.b.n.c.t.a. of the estate of decedent's daughter, contends that the rule renders invalid the limitations created in favor of the children and other issue of his grandchildren, resulting in an intestacy. Accountant, on the other hand, takes the position that current Pennsylvania law, chiefly Harrah Estate, 364 Pa. 451, validates the testamentary plan.

Both sides concede that the original common law rule would destroy the present limitations. It dealt with possibilities, not actualities. Its requirement, that all estates vest in interest within a period measured by a life in being plus 21 years, could not be met in this case, since the class of testator's grandchildren might increase after his death. In such circumstances, the common law invalidated the entire class gift; neither would it close the class prematurely in order to save the estates to some of the class members from invalidity.

This view of the rule, however, has been much changed. As to estates created since enactment of the Estates Act of April 24, 1947, P. L. 100, it is clear that violations of the rule are now to be measured by actual events rather than potentialities. This more tolerant view was no doubt derived from existing case law, which had come more and more to separate valid from invalid interests, primarily in order to hew as closely as possible to expressed testamentary intent.

The present estate has been in the Supreme Court of Pennsylvania previously, at 343 Pa. 478, and there it was held that the life estates created by testator did not fall, whether or not subsequent remainder interests were invalid. Citing Quigley's Estate, 329 Pa. 281, the rule was stated to be that ". . . prior limitations are not to be considered as disturbed by reason of the invalidity of ultimate ones in the absence of clear evi-

dence in the will that the testator would have intended otherwise. . . ."

This is the so-called "organic plan" rule, which enforces individual limitations unless it is clear that the testator did not, in his overall testamentary plan, intend them to stand by themselves. The court did not, however, pass on the validity of the remainder interests in this estate as that time.

That issue is now before this court, and is controlled by Harrah Estate, supra, which continued the reasoning of Quigley one logical step further. There it was held that the "horizontal" separability in Quigley (of good life interest from void remainder) was no different from the standpoint of logic and public policy than the "vertical" separability brought about by dividing good from void remainder interests. Thus, it is now the law that interests which, in fact, vest within the period of the rule will be preserved, unless testator provides otherwise, and this is now applied to every interest attacked for remoteness. All that might be said concerning the reasons for this rule has been well set forth in Harrah Estate, and little would be gained from repeating that discussion here.

It has been suggested that this testator had an organic plan of the sort which takes the case out of the above rule of separability of interests. It is pointed out that testator did not name his living grandchildren, but deliberately created an open class gift, and also that when he made his will his youngest grandchild had just become seven years of age, from which the court is asked to assume that testator expected to, and tried to, benefit additional grandchildren. It is further said that testator's plan was to create a trust, the principal of which could never be distributed to issue closer than great-grandchildren, and that sustaining the present interests will ratify this illegal plan. But if grandchildren had been born after his death, the limitations

to their offspring would even now be invalid, if they did not vest within 21 years of the death of the last survivor of testator's daughter and his grandchildren born during his life, who, of course, all constitute the lives in being in this case. There is nothing in testator's will from which I must infer an intent that no great-grandchild should benefit from its provisions, if all could not. Testator was chiefly concerned with the child and grandchildren he knew; he wished to provide security for them as long as possible; their income interests were carefully made subject to a spendthrift clause. The limitations to his more remote issue, whom he never knew, were necessary to complete distribution of his estate and avoid an intestacy, but certainly cannot be termed an indispensible part of his overall testamentary scheme. I accordingly conclude that testator's gifts in remainder to his great-grandchildren and their issue are valid. . . .

AND NOW, September 29, 1965, this adjudication is confirmed nisi.