Morton Estate.

Argued May 22, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Samuel S. Logan, Jr.*, with him *Kirk T. Karaszkie-wicz*, and *Montgomery, McCracken, Walker & Rhoads*, for appellants.

*Austin M. Lee*, for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, November 26, 1973:

This case presents a difficult question involving the application of the Rule Against Perpetuities.[1] At issue

---

[1] Stated simply, the Rule Against Perpetuities invalidates future estates which, by possibility, may not become vested within the

is the validity of gifts in remainder to three of testator's great grandchildren, following successive life estates to his children and grandchildren where similar gifts are invalid because grandchildren were born subsequent to testator's death.

Thomas G. Morton died testate on May 20, 1903, and was survived by his wife, three daughters and two sons. He bequeathed his residuary estate in trust and directed the trustees to pay two-thirds of the net income to his wife for life, and one-third to his daughter, Bertha, for her life. Testator further provided that, upon the death of his wife, the trustees were to pay her share of income equally to his daughters, Helen and Isabella, for their lives and, upon their respective deaths, their income was to be paid to their children for life with remainders over to their issue per stirpes. Upon the death of Bertha, her share of income was to be distributed equally to her children for their respective lives and, upon the death of each of them, the principal from which the one dying had been receiving income was to be paid to his or her issue per stirpes. Testator made no provision for his sons in the disposition of the residuary estate.[2]

Bertha was survived by five children: Thomas, Samuel, Isabel, Clair and James. Clair is alive and a share of the estate continues for her benefit. Isabel died without issue and, since no provision was made in the will for this contingency, her share passed by intestacy as an undisputed share of the testator's estate. Thomas, Samuel and James have also died, all survived by issue.

---

time prescribed by law—a life or lives in being and twenty-one years. The Estates Act of April 24, 1947, P. L. 100, §§1-18, *as amended*, 20 P.S. §§6101-6117 (1973), changes the rule from a possibilities test to an actualities test, but does not apply to instruments executed before 1948, such as the present will.

[2] The sons were provided for by specific bequests.

The death of James initially raised the question of the validity of the remainders provided for testator's great grandchildren. Since James was not born during his grandfather's lifetime, the remainder following his death might not have vested within the permissible period provided by the Rule Against Perpetuities. The remainder was found invalid and the interest passed by intestacy through the estate of the testator. *Morton Estate,* 50 D. & C. 2d 8 (Phila. C. P. 1970).

The interests of Thomas and Samuel are the subject of this appeal. Both were born in testator's lifetime and they were survived by children. The appellants are the children of Thomas and Samuel (great grandchildren of testator), who claim their parents' shares as remaindermen under the express terms of testator's will. The auditing judge in the Orphans' Court Division of the Court of Common Pleas of Philadelphia rejected this claim and struck down appellants' remainders, reasoning that failure to apply to appellants the Rule Against Perpetuities would defeat testator's "organic plan" of distribution. Exceptions were dismissed by the court en banc and a final decree entered.

Appellants argue that their remainder interests should be separated from those in violation of the Rule Against Perpetuities and upheld as independent gifts under the doctrine of "vertical separability" as postulated in *Harrah Estate,* 364 Pa. 451, 72 A. 2d 587 (1950). In *Harrah,* the testator left a portion of his estate in trust to pay the income to his sons for life, then to his son's children for the life of each with a remainder interest in the heirs of each grandchild. The lower court determined that the gifts in remainder violated the Rule Against Perpetuities because testator's son could have had children born more than twenty-one years after the last of testator's grandchildren who were born in testator's lifetime. On appeal, we adopted the doctrine of "vertical separability" and held that the

gift in remainder to the heirs of the hypothetical after-born child could be separated from the remainders of the heirs of each grandchild who was living when the testator died.

Under the facts in *Harrah* a perfect result was obtained because all grandchildren were born in testator's lifetime and the whole of testator's disposition could be sustained. The same is not true in the instant case. In addition to Bertha's son, James, two of Isabella's three children were born subsequent to testator's death. Consequently, the remainder interests in the offspring of these two children of Isabella also violate the Rule Against Perpetuities.

The problem in this situation was anticipated by Judge SHOYER, writing for the court en banc sur the exceptions to the 1970 adjudication invalidating James' remainder, *Morton Estate*, 50 D. & C. 2d 8, 19 (Phila. C. P. 1970) : "Looking at this family tree 67 years after testator's death, this is the picture that we see coming into focus. Of a total of nine grandchildren, descended through two of testator's three daughters, it seems that five will be survived by issue, and only two of these five lines will comply with the rule against perpetuities. As a result of this factual situation, a further question may be presented in the future arising from the problem posed by Comment f of the Restatement [Property], §389, and discussed in Edwards Estate, 407 Pa. 512. We refrain from expressing any opinion at this time concerning this question."

Faced with this question below the auditing judge adopted the approach of these two authorities to strike down appellants' remainders. Both Comment f of the Restatement, Property, §389, and *Edwards* involve partial invalidity of an attempted disposition due to violation of the Rule Against Perpetuities. Comment f suggests that separability may not apply where there is such a distortion of the general plan of disposition that

under Restatement, §402,[3] the invalidity of the part would cause the invalidity of the disposition of corpus in all the shares. In *Edwards,* the Court restated the test to determine whether separability is to obtain: "whether 'the striking down of the void gifts would . . . so emasculate his [the testator's] plan of distribution as to render it reasonably certain he would not have made the will in the way he did had he known it could not be sustained in the respects in which it must be set aside'." *Edwards Estate,* 407 Pa. 512, 516-17, 180 A. 2d 590, 591-2 (1962). The auditing judge correctly concluded that separation would defeat or emasculate testator's organic plan.

Appellants argue that "vertical separability" ought to be applied without regard for testator's plan of disposition. They support this position by arguing that no reference was made to Comment f, §389, in *Harrah* and that, in any event, the holding there was arrived at wholly independent of the Restatement. Although there is no specific reference to Comment f in *Harrah,* lengthy discussion was given to the rationale underlying Section 389. When the Rule Against Perpetuities is sought to be relaxed by separation, consideration of testator's plan of disposition is an important element. The early cases on separation considered the "main and dominant purpose of the testator." *Kern's Estate,* 296 Pa. 349, 145 A. 824 (1929) ; *McCaskey's Estate,* 293 Pa.

---

[3] Section 402 of the Restatement, Property, states: "When part of an attempted disposition fails as a direct consequence of the rule against perpetuities, the effect, if any, of this partial invalidity upon the balance of the attempted disposition is determined by judicially ascertaining whether the conveyor, if he had known of this partial invalidity, would have preferred that: (a) all the balance of the attempted disposition take effect, in accordance with its terms; or that (b) certain parts of the balance of the attempted disposition fail, but the rest thereof take effect in accordance with its terms; or that (c) all the balance of the attempted disposition fail."

497, 143 A. 209 (1928); *Feeney's Estate,* 293 Pa. 273, 142 A. 284 (1928); *Lilley's Estate,* 272 Pa. 143, 116 A. 392 (1922). The testator's organic plan of distribution was weighed in *Quigley's Estate,* 329 Pa. 281, 198 A. 85 (1938), where the doctrine of "horizontal separability" was adopted.[4] The rationale of *Quigley* was then applied in *Harrah* and the testator's organic plan was considered before allowing vertical separation.[5] We shall not depart from this established practice in the instant case. We agree with Judge SHOYER's analysis of the organic plan below: "[T]estator showed no extreme nor unusual preference among the members of his family in disposing of his initial estate. In distribution of his residuary estate, he intended absolute equality on a stirpital basis among the third generation of his descendants through the female lines. This was his organic plan. The rule against perpetuities would distort this plan so violently as to exclude from participation eight of eleven probable remaindermen."

Appellants maintain that distribution by intestacy following the invalidation of their remainders would also distort testator's organic plan since descendants of testator's sons, who were excluded from sharing in the residuary estate, would benefit. However, testator's sons have already been brought into the picture. Testator failed to provide cross remainders for distribution of the corpus where his grandchildren might die without issue. Thus, when Bertha's daughter, Isabel,

---

[4] In *Quigley,* this Court separated valid life estates from invalid remainders. *See also Kamerly Estate,* 348 Pa. 225, 35 A. 2d 258 (1944), and *Edwards Estate,* 407 Pa. 512, 180 A. 2d 590 (1962).

[5] That application was supported in *Jones Estate,* 29 D. & C. 2d 437, 457 (Allegheny O. C.), *aff'd,* 410 Pa. 380, 190 A. 2d 120 (1963): "Now it is definitely decided . . . that the philosophy behind the rationale of the separation of valid life estates from invalid remainders is now the philosophy behind the separation of valid remainders from invalid remainders."

died without issue her share passed by intestacy and the descendants of testator's sons benefited. In addition, we believe that application of "vertical separability" in this case would result in a greater distortion of testator's organic plan.

The decree of the court below is affirmed. Costs on appellants.