652 A.2d 331

**ESTATE OF Florence Earle COATES, Deceased.**

**Appeal of: PENNSYLVANIA HOSPITAL.**

**ESTATE OF George H. EARLE, Sr., Deceased.**

**Appeal of: PENNSYLVANIA HOSPITAL.**

Superior Court of Pennsylvania.

Argued Oct. 20, 1994.

Filed Dec. 23, 1994.

Ann T. Loftus, Philadelphia, for appellant.

Edmund P. Butler, Philadelphia, for Adamson and Walton, participating parties.

Before CIRILLO, OLSZEWSKI and HESTER, JJ.

CIRILLO, Judge:

Appellant Pennsylvania Hospital (Hospital) appeals from the final decrees dated September 20, 1993 of the Orphan's Court Division of the Court of Common Pleas of Philadelphia County. We affirm.

Florence Earle Coates (Testatrix) died on April 6, 1927, leaving a will dated September 24, 1926.[1] By her will, Testatrix had her residuary estate placed in trust to pay the net

---

1. To facilitate an understanding of the distribution scheme involved in this case, a family tree has been attached to the end of this opinion, which indicates the relationships, dates of birth, and dates of death of all relevant parties.

income to her daughter Alice N. Trask (Alice) for life. Upon the death of Alice, the trustee was to pay the income in equal shares to the children of Alice, the survivors and survivor of them, until the death of the last of Testatrix's grandchildren. Testatrix's residuary trust further provided that, upon the death of her last surviving grandchild, the income should be paid to her great-grandchildren per stirpes, to continue so long as permitted by the laws of the Commonwealth of Pennsylvania or until the death of such great-grandchildren. Testatrix's residuary trust then provided that, upon the termination of the trust, the principal was to be divided into two equal shares. One such share was to be paid to Hospital, and the other share was to go to the Pennsylvania Academy of Fine Arts.[2] Thus, Hospital is a remainder beneficiary under the will of Testatrix.[3]

Testatrix was the daughter of George H. Earle, Sr., who died on June 18, 1907, leaving a will dated June, 1905. According to the will of George H. Earle, Sr., a one-fifth share of his residuary estate was held in trust paying the net income

2.  The Pennsylvania Academy of Fine Arts and Testatrix's great-grand-children reached a settlement as to that one-half share, and such share is, therefore, not at issue in this case.

3.  The relevant paragraph of Testatrix's will reads as follows:

    All the rest, residue and remainder of my estate ... I give ... *In Trust* ... to pay the net income therefrom to my daughter Alice N. Trask ... and upon the death of my daughter Alice N. Trask, I direct my said Trustee to pay over the aforesaid net income in equal shares to the children of my said daughter the survivors and survivor of them for and during the natural life of my said grand-children and the survivor of them. Upon the death of my last surviving grand-child, I direct the income from the residue of my estate shall be paid to the children of my daughter's children then living *per stirpes* and not *per capita*, the said children of my daughter's children to take such share as their parents would have enjoyed if living, the trust for the payment of such income to the children of my daughter's children to continue so long as permitted by the laws of the Commonwealth of Pennsylvania or until the death of such children of my daughter's children after the death of their parents. Upon the termination of the trust ..., then I direct my said Trustee to divide the principal of the residue of my estate into two equal shares, and to pay and transfer one of said two equal shares to the Pennsylvania Academy of Fine Arts, and the remaining one of the two equal shares to the Pennsylvania Hospital....

to Testatrix for her life, and at her death was subject to her general testamentary power of appointment. Subsequent to Testatrix's death in 1927, it was determined in a 1939 adjudication of the Philadelphia Orphan's Court that the residuary provisions of Testatrix's 1926 will were an exercise of her general testamentary power of appointment under the will of George H. Earle, Sr. As a result, the residuary provisions of Testatrix's will *also* govern distribution of the trust under the will of George H. Earle, Sr.

Testatrix's daughter, Alice N. Trask, died on August 6, 1955, leaving three children: Alice Trask Adamson Mosley, Florence Earle Trask Walton, and Frances D. Trask, all of whom were lives in being [4] on April 6, 1927 (the date of Testatrix's death). Testatrix's grandchild, Alice Trask Adamson Mosley, died on April 30, 1972, leaving a daughter, Alice Adamson Feeney (born 1928). Testatrix's grandchild, Florence Earle Trask Walton, died on September 10, 1974, and was survived by her children, Florence Walton (born 1930), Charles S. Walton, III (born 1933), and Joseph W. Walton, Jr. (born 1927; died 1977). Testatrix's last surviving grandchild, Francis D. Trask, died without issue on October 2, 1987. None of the now living great-grandchildren of the Testatrix (Alice Adamson Feeney, Florence Walton, and Charles S. Walton, III), were lives in being at Testatrix's death in 1927.

Hospital objects to the distribution of income, and the proposed distribution of future income, to Testatrix's great-grandchildren. Hospital bases this objection on the grounds that the residuary trust under the will of Testatrix, and the trust under the will of George H. Earle, Sr., terminated at the death of Testatrix's last surviving grandchild because the purported income interests to the great-grandchildren of Testatrix are invalid under the common law rule against perpetuities.

---

4. A "life in being," as used in the common law and statutory rules against perpetuities, means "the remaining duration of the life of a person who is in existence at the time when the deed or will takes effect." *Black's Law Dictionary* 833 (5th ed. 1979).

On April 1, 1993, Auditing Judge Theodore A. McKee, now judge of the U.S. Court of Appeals for the Third Circuit, dismissed Hospital's objections. On April 21, 1993, Hospital filed exceptions to the Auditing Judge's Amended Adjudications. On September 20, 1993, the Honorable Edmund S. Pawlec, writing for the Orphan's Court *en banc,* dismissed Hospital's exceptions, and confirmed the Amended Adjudications of the Auditing Judge absolutely. Hospital timely filed this present appeal from the Orphan's Court final decree, and currently raises two issues for our review:

(1) Whether the doctrine of "vertical separability" applies in the instant case to validate estates which would otherwise be invalid under the "possibilities test" of the common law rule against perpetuities?

(2) Whether the retroactive application of the "actualities test" of the statutory rule against perpetuities under 20 Pa.C.S.A. § 6104 is an unconstitutional taking of property without due process of law?

■■■■ Hospital's first argument challenges the finding of the Orphan's Court that the doctrine of "vertical separability" applies to preserve the estates of Testatrix's great-grandchildren, when these estates would otherwise be invalid under the "possibilities test" of the common law rule against perpetuities. When we review a decision of the Orphan's Court, our task is to insure that the record is free from legal error. *In Re Estate of Lychos,* 323 Pa.Super. 74, 470 A.2d 136 (1983); *In Re Estate of Dembiec,* 321 Pa.Super. 515, 468 A.2d 1107 (1983). We will modify a decree of the Orphan's Court only if the findings on which it rests are not supported by competent and adequate evidence, or if there has been an error of law, an abuse of discretion, or if they are predicated upon a capricious disbelief of competent and credible evidence. *Estate of Kovalchick,* 345 Pa.Super. 229, 232–33, 498 A.2d 374, 376 (1985); *Estate of Gilbert,* 342 Pa.Super. 82, 87, 492 A.2d 401, 404 (1985); *Lychos, supra; Dembiec, supra.* We are not limited in our review of the legal conclusions that the Orphan's Court derived from those facts. *Dembiec, supra.* After carefully examining Hospital's argument, the record, and the relevant

case law, we find Hospital's argument and analysis facially persuasive, yet ultimately incorrect. The trial court committed no error.

■ Hospital contends that under the common law rule against perpetuities (the "Rule"), the income interests to Testatrix's great-grandchildren were invalid. The Rule is generally stated as follows: "No ˙interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." Gray, *The Rule Against Perpetuities* § 201, at p. 191 (4th ed.1942).

This court recently discussed the evolution of the Rule in the area of class gifts and the trend in Pennsylvania to ameliorate the harsh results of a literal application of the common law Rule. *In Re Estate of Weaver,* 392 Pa.Super. 312, 320–21, 572 A.2d 1249, 1253–54 (1990). The early common law Rule began with the founding of Pennsylvania and lasted until 1929. During this period, this Commonwealth followed the early common law Rule. *Id.* This early application of the Rule required use of the "possibilities test" to determine the validity of all future interests. *Id.* Under the "possibilities test," a future interest, such as a remainder in a trust to all great-grandchildren, was void if there was even the slightest possibility that the interest might vest beyond the permissible period of a life or lives in being plus twenty-one years. *Id.* (citing Levin, *Section 6104(d) of the Pennsylvania Rule Against Perpetuities: The Validity and Effect to the Retroactive Application of Property and Probate Law Reform,* 25 Vill.L.Rev. 213 (1980)).

From 1929 to 1947, however, a transition occurred, and a new doctrine called ˙"vertical separability" was introduced. *Weaver, supra.* The vertical separability doctrine eliminated the harsh effect of the "possibilities test" in certain circumstances. *Id.* Vertical separability provided that valid remainders could be separated from those that were void so that the valid remainders could still be given effect. *Id.* Vertical separability can be applied as long as the testator's plan of

distribution is not defeated. *In Re Harrah's Estate,* 364 Pa. 451, 462, 72 A.2d 587, 592 (1950).

The final stage, or modern era, of the Rule began in 1947, with the passage of the Intestate, Wills and Estates Act of 1947 ("Estates Act of 1947"). The Estates Act of 1947 replaced the common law Rule's "possibilities test" with the "actualities test." 20 Pa.C.S.A. § 6104; *Weaver, supra* 392 Pa.Super. 312, 572 A.2d 1249. Under the "actualities test" approach, Pennsylvania courts ascertained the validity of future interests by looking to the events which actually had occurred during the period of the common law Rule (a life or lives in being plus twenty-one years), and not by events which could possibly occur during this period. 20 Pa.C.S.A. § 6104; *Weaver, supra.* The Pennsylvania Supreme Court subsequently interpreted the "actualities test" under the Estates Act of 1947 to be applicable to only those testamentary trusts which were created after January 1, 1948. *See Estate of Davis,* 449 Pa. 505, 297 A.2d 451 (1972); *In Re Lovering's Estate,* 373 Pa. 360, 96 A.2d 104 (1953); *In Re Newlin's Estate,* 367 Pa. 527, 80 A.2d 819 (1951). In 1978, however, the legislature amended the statutory rule, by providing for the retroactive application of the statute to "all interests heretofore and hereafter created." 20 Pa.C.S.A. § 6104(d).

Hospital presently contends that the remainder interest to Testatrix's great-grandchildren is invalid under the Rule as it was in effect at the time of Testatrix's death, that is, under the "possibilities test," which considered possible events rather than actual events to determine the validity of the future interests. Although the "possibilities test" approach was in effect at the time of Testatrix's death in 1927, the doctrine of vertical separability can be applied to the remainder interests of the Testatrix's great-grandchildren. In the case of *In Re Harrah's Estate, supra* 364 Pa. 451, 72 A.2d 587, our Supreme Court applied vertical separability in 1950 to a will executed in 1890, even though the will was created during the time when the "possibilities test" was in effect.

In *Harrah's Estate,* vertical separability was applied to a will which closely resembles Testatrix's will. In that case, the

testamentary trust provided for successive life estates in the trust income to be paid to testator's son and grandchildren, with the remainder to be distributed to the testator's great-grandchildren. As in this case, the great-grandchildren's remainder was challenged as a violation of the "possibilities test" under the Rule. The challenge was that it would have been possible for the testator's son to have had more children after the testator's death, and that these after-born children could have subsequently had children born more than twenty-one years after the death of the grandchildren who were lives in being at testator's death. The court applied the doctrine of vertical separability and held that the remainder to the heirs of the grandchildren, who were alive at the testator's death, could be separated from the remainder to the heirs of a hypothetically after-born child of the testator's son. *In Re Harrah's Estate*, 364 Pa. at 457–63, 72 A.2d at 590–92. In deciding to apply vertical separability, the court also relied on the fact that it was not defeating the "organic plan of the testator." *Id.* at 463, 72 A.2d at 592. Not altering the overall distributive plan of the testator has become a solid requirement before the doctrine of vertical separability can be applied. *Weaver, supra; In Re Estate of Morton*, 454 Pa. 385, 312 A.2d 26 (1973).

In a recent decision involving a will with a testamentary disposition similar to this case, this court applied vertical separability to separate valid remainders from possibly invalid ones. *Weaver, supra* 392 Pa.Super. 312, 572 A.2d 1249. In *Weaver*, the testator provided that trust income was paid to the testator's widow and his children, then to his grandchildren, with the principal to be distributed to each of the testator's great-grandchildren upon the death of their beneficiary parent. *Weaver*, 392 Pa.Super. at 315, 572 A.2d at 1250. As argued in the present case, the objectors in *Weaver* argued that it could have been possible for the testator's daughter to have had another child after the testator's death, and that this child could have subsequently had children born more than twenty-one years after the death of the grandchildren who were lives in being at testator's death. The court found that the remainder to the testator's great-grandchildren was valid

even though the "possibilities test" was in effect at the time of the testator's death. *Id.* at 322–25, 572 A.2d at 1254–56. We reached this result because the remainder could be separated from the hypothetically void remainder and doing so would not have altered the testator's overall testamentary plan. *Id.* at 322–25, 330, 572 A.2d at 1254–56, 1258.

The analyses in *Harrah's Estate* and *Weaver* are directly applicable to this case. Similarly, the doctrine of vertical separability is directly applicable to this case. Hospital argues, however, that the doctrine of vertical separability sets up a two-part test, which is not satisfied in this case, thereby precluding application of the doctrine. Hospital claims that for vertical separability to apply, *there must first be valid interests* under the common law "possibilities test" of the Rule, which are able to be separated from the void interests under the Rule. Only if there are these valid interests, Hospital contends, can we then look to the second step of the doctrine which requires no disruption of the testator's overall distribution scheme. Hospital claims that the trial court failed to properly apply the first part of this test. The trial court found the remainder interests of Testatrix's great-grandchildren to be valid interests, and did so by comparing these interests to those which were questioned in *Harrah's Estate.* Hospital strongly argues, however, that this case is not controlled by *Harrah's Estate* and vertical separability because the remainder interests in the two cases are "critically different."

In *Harrah's Estate,* the testator's residuary trust provided that the trust pay income to the testator's son George, for life, then pay one-third of the income to George's widow for life and two-thirds of the income to George's children during the life of each child. The trust further provided that, *upon the death of any such child* (testator's grandchild), to distribute his or her share of said principal according to the intestate laws of Pennsylvania. George had four children, all of whom were alive at testator's death, and no children were born to George after testator's death. When George's son Julius died,

the issue of the Rule arose. Hospital claims that it is this emphasized language, "upon the death of any such child," which (a) distinguishes *Harrah's Estate* from this case, (b) illustrates that the remainder interests to Testatrix's great-grandchildren are not valid, which leads to (c) non-compliance with step one of vertical separability which precludes that doctrine's application in this case.

Specifically, Hospital contends that the above phrase from the will in *Harrah's Estate* enabled the remainder interests in that case to vest *necessarily* within the time period under the Rule. Hospital argues that this was because "[i]n all events, even the possibility George would have another child born after the death of testator, the interests of Julius' intestate heirs would vest upon Julius' death and Julius was a life in being. The possibility George could have a child born after the testator's death could not affect the vesting of the remainder interest to Julius' intestate heirs." Hospital focuses on the vesting of the remainder interests to the grandchild's intestate heirs with the death of *each* grandchild. Although this manner of vesting was, in fact, true under the facts in *Harrah's Estate,* Hospital's argument infers that this is now a requirement for the application of vertical separability—"This critical fact, that the interests under all possibilities necessarily must vest within the permissible period [under the Rule], is what makes the interests valid, and therefore, separable." Hospital then goes on to make this the key factor which distinguishes *Harrah's Estate* from this case. Hospital argues that, unlike *Harrah's Estate,* the remainder interests in this case to Testatrix's great-grandchildren do not necessarily vest, under the "possibilities test" of the Rule, within the permissible time period. Hospital bases its argument on the language used in Testatrix's will that income was to be paid to Testatrix's grandchildren *until the death of the survivor of all of her grandchildren,* and only then, "upon the death of my last grandchild," was income to be paid to Testatrix's great-grandchildren. Hospital argues that only after the death of *all* of the grandchildren would the great-grandchildren's remainder interests have vested. It is this difference, Hospital contends,

which made the remainder interests in *Harrah's Estate* valid and the remainder interests here invalid. Hospital cites no authority for its interpretation that vertical separability, as applied by the court in *Harrah's Estate*, requires that the remainder interests must necessarily vest under all possibilities within the permissible time period under the Rule in order for those remainder interests to be valid. Indeed, this interpretation of *Harrah's Estate* by Hospital is incorrect.

Although there is a difference between the way the remainder interests in this case vest and the way they vested in *Harrah's Estate*, this difference is without consequence. This is because the remainder interests to Testatrix's great-grandchildren became *"fixed"* upon the death of each grandchild, and were therefore valid, even though those interests did not *vest* upon the death of each grandchild. Since the remainder interests to Testatrix's great-grandchildren are valid, they can be separated from possibly void interests under vertical separability, even though these interests may not vest in exactly the same way as those in *Harrah's Estate*. This is possible because the doctrine of vertical separability provides:

> When, *on a gift to a class, the number of shares is definitely fixed within the time required by the rule against perpetuities* [,] the question of *remoteness is to be considered with reference to each share separately.*

Gray, *Rule Against Perpetuities, supra* at 345 (emphasis added), *cited with approval in Harrah's Estate*, 364 Pa. at 458, 72 A.2d at 590; *Weaver*, 392 Pa.Super. at 324, 572 A.2d at 1255. In this case, just as in *Harrah's Estate* and *Weaver*, the great-grandchildren's shares were definitely fixed within the time required by the Rule. Testatrix's will provided:

> "Upon the death of my last surviving grandchild, I direct the income from the residue of my estate shall be paid to the children of my daughter's children [Testatrix's great-grandchildren] then living *per stirpes* and not *per capita, the said children of my daughter's children to take such share as their parents would have enjoyed if living....*"

(emphasis added). Testatrix's great-grandchildren were to take their shares *per stirpes*.[5] Thus, even though Testatrix's great-grandchildren were not to receive any income until *all* grandchildren were deceased, their separate shares became fixed upon the death of *each* grandchild.[6] This point was explained by the court in *Harrah's Estate* as it pointed out that, "where it cannot be ascertained what is the share of each member of the class, the gift is void to all, but *when the children of each child form a separate class [i.e. per stirpes], the share of each class is separately ascertainable. The gifts to those in the separate class is [sic] valid."* *Harrah's Estate,* 364 Pa. at 460, 72 A.2d at 591 (emphasis added) (quoting *Albert v. Albert,* 68 Md. 352, 12 A. 11 (1888)). In *Weaver,* this court also emphasized the importance of this fact that the interests of the great-grandchildren were fixed as it decided to apply the doctrine of vertical separability. We held in *Weaver* that "[u]nder the doctrine [of vertical separability], *because [testator's grandchild] was a life in being at the time of the will's execution, the remainder to his issue [testator's great-grandchildren] was valid,* and any possibly void remainder interest to after-born children of his mother, which, as in *Harrah's Estate,* did not actually occur, was separable." *Weaver,* 392 Pa.Super. at 325, 572 A.2d at 1256 (emphasis added).[7]

5. "Per stirpes" describes the method of dividing an estate "where a class or group of distributees take the share which their deceased would have been entitled to, taking thus by their right of representing such ancestor, and not as so many individuals." *Black's Law Dictionary* 1030 (5th ed. 1979). "Per capita," on the other hand, describes that method of dividing an estate "by which an equal share is given to each of a number of persons, all of whom stand in equal degree to the decedent, without reference to their stocks or their right of representation." *Id.* at 1022.

6. For example, when Alice Trask Adamson Mosely died, in 1972, her daughter's interest became fixed, although it did not become vested until the last grandchild (Francis D. Trask) died.

7. The Weaver will, which is similar to Testatrix's will, provided: "Upon the death of my daughter, ... I direct my trustees to pay ... her share of income to her children [testator's grandchildren] then living and the issue of such of her children [testator's great-grandchildren], if any, as may have died, in equal shares, *per stirpes* and not *per capita,* for and during the life of each of such beneficiaries...." *Weaver, supra.*

This analysis is directly applicable to this case. Here, because Testatrix's grandchildren were lives in being at the time of the will's execution, the remainder to their issue, Testatrix's great-grandchildren, was fixed and, therefore, valid. Gray, *Rule Against Perpetuities, supra* 201 at p. 191 (4th ed. 1942); *Harrah's Estate, supra* 364 Pa. 451, 72 A.2d 587; *Weaver, supra* 392 Pa.Super. 312, 572 A.2d 1249. Consequently, any possibly void remainder interest to after-born children of their (the grandchildren's) mother, was separable under the doctrine of vertical separability.

The result of this extensive analysis is that the remainder to Testatrix's great-grandchildren was valid, and is separable from any hypothetically void remainder under the vertical separability doctrine as long as this would not disturb the overall testamentary plan. In the matter before us, it is clear that it was the intent of Testatrix to provide her great-grandchildren with the income from this trust for as long as a period of time as she legally could. All of Testatrix's great-grandchildren will share in her income if their interests are upheld. None will be excluded. Her testamentary plan of distribution will not be disturbed or altered. Consequently, we find that the doctrine of vertical separability is applicable to preserve the remainder interests of Testatrix's great-grandchildren. *Weaver, supra; Harrah's Estate, supra. But cf. In Re Morton's Estate,* 454 Pa. 385, 312 Pa. 26 (1973) (declining to apply vertical separability to separate valid remainders from invalid remainders since to do so would exclude eight of eleven remaindermen, thus doing violence to the testator's testamentary scheme).

In its argument that the remainder interests to Testatrix's great-grandchildren were void, thereby precluding application of the vertical separability doctrine, Hospital claims that the trial court, in order to find valid interests and reach its conclusion that vertical separability could be used, effectively had to apply the "actualities test" of 20 Pa.C.S.A. § 6104. This claim is without merit since, as discussed above, the great-grandchildren's interests *were* valid. Vertical separability applied to preserve these interests, and application of the "actualities test" was not necessary. The vertical separability

doctrine does not involve application of the "actualities test." They are two separate approaches to ameliorating the harsh effects of the Rule. This is evidenced by the fact that vertical separability was adopted in *Kern's Estate* in 1929, which was almost two full decades before the "actualities test" was statutorily adopted in 1947 with the passage of the Intestate, Wills and Estates Act. *Kern's Estate*, 296 Pa. 348, 145 A. 824 (1929). Indeed, the court in *Weaver* found that not only was the testator's intended distribution to his great-grandchildren permissible under the vertical separability doctrine, as described above, but it was *also* valid under today's statutorily amended Rule using the retroactive application of the "actualities test." *Weaver*, 392 Pa.Super. at 330, 572 A.2d at 1258.

Finally, Hospital claims that, since the trial court "had to apply" the "actualities test" in order to find that the great-grandchildrens' interests were valid and thereby applied vertical separability, it has been deprived of a vested property interest without due process of law. More specifically, Hospital argues that if the income of the trust is permitted to be paid to Testatrix's great-grandchildren by the retroactive application of the "actualities test" under 20 Pa.C.S.A. § 6104(d), then it is deprived of a property interest without due process in violation of the Fourteenth Amendment to the United States Constitution and of Article I, Sections 1 and 9, of the Pennsylvania Constitution. As explained, the arguments which Hospital uses to reach this issue are without merit. Therefore, we do not reach Hospital's constitutional challenge to the retroactive application of the "actualities test" under Section 6104(d). However, we direct Hospital's attention to *In Re Frank*, 480 Pa. 116, 389 A.2d 536 (1978), where our Supreme Court affirmed the trial court's application in that case of the amended statute making the "actualities test" retroactively applicable "to all interests heretofore or hereafter created." 20 Pa.C.S.A. § 6104(d). In addition, this court in *Weaver* recently did the same as it also affirmed the trial court's retroactive application of the "actualities test" to a remainder created in a 1934 will.

Decrees affirmed.